UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELAYAH LOCKETT-JOHNSON, a minor, by her mother and next friend, SYDNIE WILLIAMSON, and SYDNIE WILLIAMSON, individually,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA and SILVER CROSS HOSPITAL AND MEDICAL CENTERS,<br><br>Defendants. | Case No. 16-cv-8032<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Sydnie Williamson, on behalf of herself and her daughter Melayah Lockett-Johnson, brought this action arising from a birth-injury against the United States and Silver Cross Hospital and Medical Centers. The United States now moves this Court to grant summary judgment in its favor based on Williamson's failure to comply with the Federal Tort Claims Act's statute of limitations. For the reasons set forth herein, that motion [52] is granted.

**Background**

The following facts are undisputed unless otherwise noted. Williamson became pregnant in 2010 and received prenatal care from the Will County Community Health Center (WCCHC). WCCHC is a federally qualified health center that received grant money from the Health Resources Services Administration and was therefore subject to the Federal Tort Claims Act during the times at issue. Dr. Garcini had a contract with WCCHC to provide on-call delivery services for WCCHC patients at Silver Cross Hospital, and therefore constituted a federal employee within the meaning of the Federal Tort Claims Act. Dr. Garcini only saw WCCHC patients at Silver Cross Hospital and did not provide any services at WCCHC's primary location. Dr. Garcini, however, also saw patients

1

at Silver Cross Hospital on behalf of the hospital and his own medical practice, Partners in Obstetrics and Women's Health, P.C.

On March 21, 2011, Williamson went into labor and sought medical care at Silver Cross Hospital. Dr. Garcini, who had seen Williamson previously, delivered Melayah. During the course of the delivery, Melayah suffered from a brief shoulder dystocia[1], which was promptly relieved. The delivery proceeded successfully without other complications. On Williamson's discharge from Silver Cross, Dr. Garcini completed and signed an "obstetrics discharge summary sheet" which indicated that the "attending physician" had been "WCCHC." On March 21, Williamson also completed a consent form, on which she acknowledged, in pertinent part, that "all physicians . . . furnishing services to me . . . are independent contractors and are not employees or agents of the hospital."

In April 2011, Williamson took her daughter to the Children's Memorial Hospital brachial plexus clinic. During that visit, Melayah was diagnosed with Erb's paralysis in her right arm which was attributed to a birth injury. Williamson retained counsel shortly thereafter, potentially after viewing a television ad suggesting that Erb's paralysis might result from legally actionable medical conduct. Counsel for Williamson began investigating her claims, and requested relevant medical records during 2011. Williamson's counsel subsequently sought the input of multiple physicians. In January 2014, one of those physicians returned the opinion that Dr. Garcini's negligence had caused Melayah's injuries.

On October 6, 2014, Williamson filed a lawsuit against Dr. Garcini, individually and as an employee of Silver Cross Hospital and Partners in Obstetrics and Women's Health, in Will County Circuit Court. That lawsuit was subsequently removed to federal court in light of Dr. Garcini's status as a federal employee. The case was ultimately dismissed on October 14, 2015, based on Williamson's failure to exhaust the FTCA's administrative claim requirement.

---

[1] Shoulder dystocia describes a situation in which a baby's shoulder becomes stuck during birth.

On December 17, 2015, Williamson sent her administrative claim to the Department of Health and Human Services. Williamson subsequently filed this action on August 11, 2016. The United States now moves for summary judgment, based on Williamson's failure to comply with the applicable statute of limitations.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

Williamson's claims against Dr. Garcini are brought under the Federal Tort Claims Act (FTCA), a Federal statute which enables plaintiffs to file civil suits against the Federal government and its agents. 28 U.S.C. § 1346(b). The FTCA is subject to a statute of limitations which requires that a claim against the federal government or its employees must be presented to the appropriate administrative agency within two years "after such claim accrues" or it will be "forever barred." 28 U.S.C. § 2401(b).

In FTCA cases alleging medical malpractice, a plaintiff's claim accrues when the plaintiff discovers, or a reasonable person in the plaintiff's position would have discovered, that she has in

fact been injured by an act or omission attributable to the government. *E.Y. ex rel. Wallace v. U.S.*, 758 F.3d 861, 865 (7th Cir. 2014). Therefore, a plaintiff's claim accrues when the plaintiff knew enough, or should have known enough, to suspect that his or her injury had a "doctor-related cause." *Arroyo v. United States*, 656 F.3d 663, 665 (7th Cir. 2011) (*citing United States v. Kubrick*, 444 U.S. 11, 123, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Accrual, however, "does not wait until the plaintiff learns that their injury was caused by a doctor's negligence." *Arroyo*, 656 F.3d at 665 (*citing Kubrick*, 444 U.S. at 123).

Here, Williamson contends that she had no actual knowledge that her daughter's injuries resulted from Dr. Garcini's negligence until her experts informed her of their opinions to that effect in January 2014. Until that time, Williamson contends it would have been impossible for her to rule out the possibility that Melayah's injury resulted from the "maternal forces of labor." Williamson, however, conflates establishing a doctor-related cause and establishing a doctor's negligence. Although Williamson and her lawyers may not have known whether negligence caused Lockett-Johnson's injury before January 2014, it is undisputed that in 2011 Williamson contacted an attorney because she "felt the doctor was at fault" for her daughter's Erb's palsy. (Dkt. 54-1 173:16-19). Thus, by 2011 Williamson knew enough to suspect that the injury had been or may have been caused by Dr. Garcini. *See Blanche v. United States*, 811 F.3d 953, 959 (7th Cir. 2016) (recognizing that retaining counsel indicates a subjective belief that the alleged injury may have had a doctor-related cause). Williamson's claim therefore accrued, at the latest, by August 2011. Accordingly, the statute of limitations expired in August 2013, well before Williamson initiated any litigation concerning her daughter's birth.

Williamson alternatively contends that, if her claim was not timely, the statute of limitations should be equitably tolled. Equitable tolling is reserved for "rare instances" in which extraordinary circumstances prevented the plaintiff from filing her complaint in time. *Blanche*, 811 F.3d at 962. In

4

order for equitable tolling to apply, the plaintiff must establish that (1) she diligently pursued her claim and (2) extraordinary circumstances prevented her from timely filing her complaint. *Id.*

Williamson argues that the statute of limitations should be equitably tolled because Dr. Garcini's status as a WCCHC employee was not disclosed to her. It is well established, however, that a medical provider's failure to reveal its federal status does not support equitable tolling. *Id.* It is not the job of physicians, clinics, or hospitals to provide a patient with detailed instructions on how to sue the provider for malpractice. *Arteaga v. United States*, 711 F.3d 828, 834 (7th Cir. 2013). As the Seventh Circuit has noted, medical malpractice attorneys have an obligation to research possible defendants, including examining whether the possible defendants are federally affiliated.[2] *Id.*

Here, Williamson has failed to identify any evidence establishing that her counsel diligently attempted to uncover the nature of Dr. Garcini's employment. Williamson concedes that her lawyers did not conclude that she had a legally actionable claim against Dr. Garcini until January 2014. Williamson's lawyers, moreover, admitted that it was not until January 2014 that they asked Williamson questions which would be relevant to determining Dr. Garcini's professional affiliation. Moreover, based on the sworn statements of counsel, it appears that their research into Dr. Garcini occurred "in preparation" to filing Williamson's initial lawsuit in 2014. The undisputed evidence thus establishes that Williamson's lawyers did not inquire into Dr. Garcini's status until 2014, despite having been retained in late 2011. By that point in time, the statute of limitations had already expired. Counsel therefore cannot have diligently been pursuing this case before time expired.

Counsel, moreover, had reason to suspect that Dr. Garcini was federally affiliated from the time that this suit began. From the beginning, it was clear that Dr. Garcini, the physician who delivered Melayah, would be a key figure in this case. Williamson had received almost all of her prior prenatal care from a federally affiliated health center, a factor which strongly suggested that her

---

[2] The court notes that the same law firm representing Williamson here also represented the plaintiff whose claim was held to be time-barred under the FTCA in *Arteaga*.

subsequent hospital care was provided by a federally affiliated doctor. *See Blanche*, 811 F.3d at 963 (recognizing that a plaintiff had reason to suspect that her doctor was affiliated with a federally funded health center where she had received all of her prenatal care from the center and understood that the health center's physicians only delivered at a certain hospital). As the government convincingly notes, all of the key cases that the parties rely on here have involved federally funded clinics who contract for medical services at nearby hospitals. *See, e.g., Id.* (concerning employees of WCCHC who provided care at Silver Cross Hospital). The fact that Dr. Garcini wrote "WCCHC" on the plaintiff's discharge paperwork only placed counsel on further notice that Dr. Garcini might have had some form of affiliation with WCCHC.

Williamson and her lawyers' initial delay in determining Dr. Garcini's potential liability, moreover, also demonstrates her lack of diligence. As previously determined, Williamson knew that she wished to pursue a legal claim arising from her daughter's birth by the middle of 2011. Williamson and her lawyers, however, did not obtain the necessary medical records until 2012, and then spent over a year consulting with various physicians before determining that she had a viable claim. Even once Williamson and her lawyers concluded that they could pursue a claim against Dr. Garcini in January 2014, they delayed a further ten months before filing the first lawsuit relevant to this action. Such delays cannot be characterized as diligent pursuit of a claim.

Finally, the Court notes that counsels' conclusory statement that they performed an "internet search" as to Dr. Garcini's employment is insufficient to evince counsel's diligence. Although counsel's statement was made under oath, it is devoid of any indication of the methods of internet search used, the resources consulted, or the amount of time spent on the task. Absent such information, the Court has no way to know whether counsel's conclusory testimony describes conduct which would amount to a diligent effort.

The Court is sympathetic to Williamson's plight.  Williamson is not a lawyer, had no prior knowledge of the laws that now bar her claims, and no doubt trusted in her lawyers to protect her and her daughter's interests.  This Court, however, must apply the law before it, and therefore is compelled to conclude that Williamson has failed to establish that equitable tolling is warranted in the instant case.

**CONCLUSION**

For the foregoing reasons, the United States' motion for summary judgment [52] is granted and judgment is entered in the United States' favor.

IT IS SO ORDERED.

Date: 3/29/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge